■ In the Matter of RALPH N. WHARTON, Petitioner, v THOMAS SOBOL, as Commissioner of the Education Department of the State of New York, et al., Respondents.—Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent Commissioner of Education which censured and reprimanded petitioner for professional misconduct in practicing medicine.

This proceeding has its origin in a professional relationship between petitioner, a highly reputed psychiatrist licensed to practice medicine in New York, and patient A which started in April 1986 and ended in June 1987. Following hearings generated by disciplinary charges filed against him by the State Board for Professional Medical Conduct, petitioner was found guilty of engaging in immoral conduct in violation of 8 NYCRR 29.4 (a) (5) (i) on the evening of June 29, 1987 when he dined out with patient A after having terminated her office visits and having been negligent in his practice on more than one occasion (Education Law § 6509 [2]) in failing to appropriately terminate his professional relationship with patient A prior to June 22, 1987. As a consequence, respondent Commissioner of Education, implementing the vote of respondent Board of Regents, entered an order censuring and reprimanding petitioner. This CPLR article 78 proceeding to annul the Commissioner's determination ensued.

As questions of witness credibility are within the province

of the Board of Regents and the Commissioner's determination of petitioner's guilt by a preponderance of the evidence *(see,* Public Health Law § 230 [10] [f]) has ample support in the record, we affirm *(see, Matter of Carrera v Sobol,* 163 AD2d 706, 708, *affd* 77 NY2d 931). Initially we note that whether the psychiatrist-patient relationship ended prior to the evening of June 29, 1987 is a factual question to be resolved by the trier of fact *(see, Matter of Orozco v Sobol,* 162 AD2d 834, 835). Inasmuch as petitioner testified that he agreed to dine with patient A in order to discuss her need for further treatment with another psychiatrist, respondents did not abuse their discretion in deciding that although actual treatment had ended on June 22, 1987, the events of the evening of June 29, 1987 were within the psychiatrist-patient relationship.

That petitioner was guilty of immoral conduct is adequately borne out by the record. 8 NYCRR 29.4 (a) (5) (i) defines immoral conduct as including "any physical contact of a sexual nature between physician and patient". Photographs taken on the evening of June 29, 1987 by two private investigators hired by patient A depicted petitioner and patient A embracing as they proceeded along the street. Further, one of the investigators testified that he observed patient A and petitioner holding hands while in the restaurant, and both investigators testified that after dinner they saw the couple kiss, hold hands, walk arm in arm down the street and then enter petitioner's office building, remaining there for over an hour. Contrary to petitioner's belief, adopting patient A's testimony that sexual contact occurred on June 29, 1987 but not prior to that date is not inconsistent for the private investigators' testimony and photographs buttress much of patient A's version of what transpired on June 29, 1987. Nor are we persuaded that the private investigators' opinions, which were neither objected to when given at the hearing *(see, Matter of Haberman v Sobol,* 138 AD2d 838, 838-839; *Matter of Saleem v Commissioner of Educ.,* 133 AD2d 953, 954) nor relied upon by respondents, tainted the determination.

The determination that petitioner had been negligent on more than one occasion because he failed to terminate the psychiatrist-patient relationship prior to June 22, 1987 is sufficiently evidenced by petitioner's admission that, although sexual relations between him and patient A never occurred, he became aware in December 1986 that patient A had erotic dreams about him, and that soon after things began to go "downhill". Petitioner nonetheless accepted gifts from patient

A, and in April 1987 a panic attack occurred during which patient A grabbed petitioner, making it evident to petitioner that patient A was having an erotic transfer reaction. On other occasions patient A acted upon these feelings. Patient A also wrote love letters to petitioner toward the end of treatment as well as afterward. With respect to the conflicting testimony presented by the expert witnesses for both sides as to whether petitioner's behavior deviated from standard psychiatric practice, these merely posed credibility issues to be decided by respondents (see, Matter of Carrera v Sobol, supra, at 708; Matter of Morfesis v Sobol, 172 AD2d 897, 898, lv denied 78 NY2d 856). Clearly, respondents could rationally conclude that the foregoing incidents, which occurred between December 1986 and June 1987, constitute " 'distinct events of some duration during which an act or acts amounting to ordinary negligence occur[red]' " (Matter of Orozco v Sobol, supra, at 836, quoting Matter of Yong-Myun Rho v Ambach, 74 NY2d 318, 322).

Weiss, P. J., Mikoll and Crew III, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.