■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY MOORE, Appellant. [656 NYS2d 749] —Judgment of the Supreme Court, New York County (Frederic Berman, J.), rendered March 24, 1994, convicting defendant, after jury trial, of robbery in the first degree, and sentencing him, as a persistent violent felony offender, to a term of 18 years to life, reversed, on the law, and the matter remanded to Supreme Court for a new trial.

Defendant was charged with two counts of robbery in the first degree stemming from two separate, knifepoint robberies on January 22, 1993, committed in Central Park. In a pre-trial *Sandoval* hearing, the People sought permission to elicit that defendant had twice been convicted for robberies committed in the same area of the park. Supreme Court ruled that the People could establish only that defendant had two robbery convictions, "without the underlying facts of either of those cases, which would include a reference to the fact that both of

those robberies were committed in Central Park." The court observed that information about the location of the crimes would cause "substantial overwhelming damage and prejudice". During trial, however, the court modified its *Sandoval* ruling, holding that defendant had opened the door to the admission of this information.

The prosecutor asked defendant a series of questions concerning his knowledge of the dangers of Central Park, as expressed in his conversation with one of the victims.

"PROSECUTOR: You told him this part of the park could be dangerous, right?

"DEFENDANT: No, I did not. I did not tell him this part of the park could be dangerous.

"PROSECUTOR: What did you say?

"DEFENDANT: I said, this park could be dangerous.

"PROSECUTOR: Means what just happened to you * * * is a dangerous thing, right?

"DEFENDANT: No.

"PROSECUTOR: What did you mean?

"DEFENDANT: Anything else could happen.

"PROSECUTOR: He could have been robbed at knifepoint?

"DEFENDANT: Who's me to say."

In seeking modification of the *Sandoval* ruling, the People argued that defendant's final remark—"Who's me to say."—was an "unresponsive, spontaneous, completely gratuitous" answer, comprising an abuse of the protection afforded by the initial *Sandoval* ruling. By his response, the prosecutor explained, defendant was implying that he would not know anything about knifepoint robberies in Central Park. Given his two prior convictions for knifepoint robberies in the same area of Central Park, the People argued that defendant should not be allowed to mislead the jury in this way. The court accepted the People's conclusion that defendant's testimony had opened the door to cross-examination regarding the location of the prior robberies. Therefore, the prosecutor was permitted to elicit that, in 1982 and 1986, defendant was convicted for robberies committed in the same vicinity.

On this appeal, defendant contends that the court impermissibly modified its *Sandoval* ruling. More precisely, it appears that the prosecutor and the court failed to abide by the ruling. As this Court stated in *People v Owens* (203 AD2d 106, 107, *lv denied* 84 NY2d 871): "The purpose of a *Sandoval* ruling is to provide a defendant with 'definitive advance knowledge of the

scope of cross-examination as to prior conduct to which he will be subjected' should he testify (*People v Sandoval*, 34 NY2d 371, 375). Having received a determination limiting inquiry, 'defendant then had a right to rely on the court's ruling when he took the witness stand and to expect that the court would not permit cross-examination to extend to matters apparently precluded by the ruling' (*People v Aponte*, 168 AD2d 274, 275)." In this regard, we do not quarrel with the dissenters' argument that, where a defendant specializes in a particular type of crime, the prosecution may be permitted to inquire into prior convictions for the purpose of impeaching his credibility (*People v Reid*, 190 AD2d 575, *lv denied* 81 NY2d 1078). The issue raised by the present matter, however, is whether the court, having issued a *Sandoval* ruling in reliance on which defendant took the stand, was later justified in abrogating that ruling to expand the scope of inquiry into defendant's previous convictions.

It is clear that the prosecutor set out to accomplish by indirection that which had been directly foreclosed by the court's *Sandoval* ruling. The prosecutor asked defendant not only about the danger posed by "this part of the park" but also about the specific possibility of being "robbed at knifepoint" in that location. It is apparent that this line of questioning was calculated to suggest that defendant had personal knowledge of the danger of knifepoint robbery in this section of the park (*People v Dowdell*, 88 AD2d 239, 244 [probing calling attention to appellant's involvement with drugs]; *People v Pippin*, 67 AD2d 413, 417 [cross-examination suggesting commission of uncharged crimes]; *People v Alamo*, 63 AD2d 6, 9 [questioning suggesting involvement in other crimes]). Whether the line of questioning employed by the prosecutor in this case, standing alone, violated the *Sandoval* ruling is a question this Court need not decide, however. Defendant's equivocal response, "Who's me to say?", in answer to whether the victim faced the particular danger of knifepoint robbery, was used to justify disclosure of his two prior convictions for precisely this offense, committed in the same location as the crime charged in the indictment.

"In the interest of plain fairness, a trial court's authority to change its *Sandoval* ruling is limited once defendant has decided to testify in good-faith reliance on the court's pretrial ruling" (*People v Fardan*, 82 NY2d 638, 646). The issue to be decided, therefore, is whether defendant's equivocal response can be said to violate his obligation to "speak truthfully and accurately" (*People v Green*, 207 AD2d 318, *lv denied* 84 NY2d

935), that is, whether it constitutes testimony "to facts that are in conflict with the precluded evidence" (*People v Fardan, supra*, at 646). For example, where a defendant testified that he was not in the habit of carrying weapons, we upheld the modification of a *Sandoval* ruling to permit the prosecutor to elicit that, on a prior conviction, it had been established that defendant fired a loaded weapon (*People v Santiago*, 169 AD2d 557, 558, *lv denied* 77 NY2d 1000). Similarly, where a defendant portrayed himself as having an innocent past (*e.g., People v Evans*, 202 AD2d 377, *lv denied* 83 NY2d 966) or where a defendant misleadingly minimized his criminal record (*e.g., People v Morgan*, 171 AD2d 698, 699, *lv denied* 78 NY2d 971), expansion of the *Sandoval* ruling was upheld.

It is clear, however, that simple denial of involvement in the crime charged is insufficient to open the door to the introduction of prior crimes for impeachment purposes. For instance, where a defendant took the stand and denied his involvement in a narcotics sale, alleging that he knew the buyer to be an undercover officer, the Court of Appeals held that he did not " 'open the door' to admission of other crime evidence in rebuttal" (*People v Crandall*, 67 NY2d 111, 114).

This Court is unable to accept the People's position that defendant opened the door by his evasive answer to a question of doubtful validity, posed by the prosecutor during cross-examination, in the course of a line of inquiry that was foreclosed by the court's initial *Sandoval* ruling (*People v Aponte, supra*, at 275). In this case, it is apparent that "the probative value of the testimony of other uncharged crimes was outweighed by its prejudicial effect" (*People v McKinney*, 24 NY2d 180, 185). On summation, the prosecutor made it clear that this would be defendant's third conviction for a violent felony, making immediate reference to his two prior convictions for robbery in the same location of Central Park. Taken together with the questions, on cross-examination, concerning defendant's knowledge of the danger of knifepoint robberies, the prosecutor's observation that "this defendant knows something about robberies in Central Park" sufficiently conveyed to the jurors that defendant had been previously convicted of two robberies, in the same location, committed at knifepoint. We therefore conclude that it was error to modify the *Sandoval* ruling to permit the People to cross-examine defendant regarding the details of similar, uncharged crimes for the purpose of impeaching his credibility (*People v Durham*, 154 AD2d 615, 616). Concur—Wallach, Rubin and Mazzarelli, JJ.

Ellerin, J. P., and Nardelli, J., dissent in a memorandum by Nardelli, J., as follows: I disagree with the conclusion reached by the majority that it was error for the court to modify its *Sandoval* ruling, permitting the prosecution to cross-examine the defendant about the location of defendant's prior felony convictions.

The court had initially ruled that the prosecutor would only be allowed to introduce evidence of defendant's two prior robbery convictions without the underlying facts, including that both prior robberies were committed in Central Park, the site of the robbery herein. When defendant testified on direct examination, he stated that the victim had solicited him for sex and he had refused. He testified that the victim gave him money and then his watch and chain. The defendant testified on direct that he, defendant, laughed, told the victim "he shouldn't be in the park, he shouldn't be playing these types of games," whereupon the victim left. In the cross-examination, the prosecutor was obviously warranted in exploring what exactly defendant meant by these remarks and asking defendant if the Park were a dangerous place after 10 P.M. and if he had told the victim this. The defendant agreed that he had. The prosecutor then asked whether the Park could be dangerous because people get robbed and defendant stated he did not "*know what takes place*" (emphasis added) in Central Park. The defendant did agree that he told the victim that the Park was very "dangerous" and that he should not be there. The cross-examination continued:

"QUESTION: You told him this part of the park could be dangerous, right?

"ANSWER: No, I did not. I did not tell him this part of the park could be dangerous.

"QUESTION: What did you say?

"ANSWER: I said, this park could be dangerous.

"QUESTION: Means what just happened to you * * * is a dangerous thing, right?

"ANSWER: No.

"QUESTION: What did you mean?

"ANSWER: Anything else could happen.

"QUESTION: He could have been robbed at knife point?

"ANSWER: *Who's me to say.*" (Emphasis supplied.)

When the prosecutor sought to find out what defendant meant when he told the victim the Park was dangerous, the defendant *did not* agree the victim could have been robbed at knifepoint and did not even answer in an ambiguous or "equivocal" manner. Instead, the defendant, by stating "Who's me to say?" and that he did not "know what takes place" in Central

Park, conveyed to the jury affirmatively that he had *no* knowledge about criminal activity which takes part in the Park. This was, of course, not true, and the court properly did not allow the defendant to use the "shield" of the *Sandoval* ruling to mislead the jury. Instead of answering the questions about the dangers in the Park honestly and forthrightly without implicating himself, defendant sought in his answers to gain a tactical advantage by suggesting he not only knew nothing about crime in the Park but was not even a proper party to even be asked about it ("Who's me to say?" and he did not "know what takes place" in the Park). In view of the fact that defendant "gratuitously" implied that he had no knowledge of knifepoint robberies in Central Park, the court properly found that defendant had "partially" opened the door and modified the *Sandoval* ruling *only* by allowing the prosecutor to ask about the location of the prior robberies.

Thereafter, the court carefully and specifically instructed the jurors that they were to consider defendant's prior convictions only in assessing his credibility. That the jury heeded this charge is clearly shown in the fact that while convicting the defendant for the robbery of the victim herein where the proof was overwhelming, they acquitted him of another robbery where he was charged with stealing money from another man in Central Park after displaying a knife.

Furthermore, the defendant's criminal history shows that he "specialized" in robbing homosexuals in Central Park. Thus, on September 5, 1982, the defendant robbed Mr. R.P. at knifepoint in the Ramble section of Central Park and a short time later robbed Mr. M.T. at knifepoint in the same section of the Park. He was allowed to plead guilty to attempted robbery in the first degree and received a sentence of 2 to 6 years. On April 18, 1986, less than a month after he had been paroled, the defendant robbed Mr. J.P. at knifepoint in the Ramble section of Central Park. He pleaded guilty to robbery in the first degree and received a sentence of $4^1/_2$ to 9 years. He was released on parole in September of 1992 and four and one-half months later was again arrested for the crime he was convicted of, robbing an individual in the Ramble section in Central Park at knifepoint. This area is a wooded section of the Park offering cover and multiple routes of escape. More than likely because of this the defendant persistently returns to the Ramble section to rob gay men, and also does so because some victims who are not open about their sexuality may be reluctant to report the crime. Even when the crime is reported, the defendant can claim, as he did herein, that the victim

wanted to have an anonymous sexual encounter, and that the victim's property with which defendant apprehended was willingly "given" to him. Defendant's testimony in this case accused the *victim* of malicious, deliberate perjury. Therefore, defendant's attempt to manipulate the cross-examination and affirmatively mislead the jury was properly not countenanced by the court. I do not believe defendant should receive judicial immunity from questioning about the particulars of a crime, where he accuses the complainant of perjury, simply because he specializes in robbing gay men in the same location. "The fact that defendant specializes in a particular type of criminal activity does not insulate him from impeachment for such activity [citations omitted]" (*People v Reid*, 190 AD2d 575, *lv denied* 81 NY2d 1078).

Accordingly, I would affirm defendant's conviction, since his testimony "opened the door" to the modification of the *Sandoval* ruling, allowing cross-examination into the location of the prior robberies.