[671 NYS2d 34]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAT-
RICK GRIFFIN, Appellant.

First Department, April 2, 1998

**APPEARANCES OF COUNSEL**

*Peter Hinckley* of counsel (*Morrie I. Kleinbart* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Harvey M. Stone* of counsel (*Jeffrey M. Eilender* on the brief; *Schlam Stone & Dolan,* attorneys), for appellant.

## OPINION OF THE COURT

WALLACH, J.

Defendant stands convicted, following a jury verdict, of the crimes of sodomy in the first degree (Penal Law § 130.50 [2]) and falsifying business records in the first degree (Penal Law § 175.10). The jury acquitted him on an additional charge of sexual abuse in the first degree (Penal Law § 130.65 [2]). Defendant was sentenced to an aggregate prison term of 3⅓ to 10 years. We do not take issue with the position advanced by the dissent that the corpus of the evidence was sufficient to sustain this conviction. But, based on our careful review of the record, we conclude that defendant was denied a fair trial.

Defendant, a gastroenterologist, began treating the now 45-year-old female complainant for stomach complaints at St. Luke's/Roosevelt Hospital in December 1991. Over the next three years she made regular visits to defendant's private office for treatment of the stomach disorder, as well as depression. On the morning of January 13, 1995, the complainant appeared at the doctor's office for a scheduled upper endoscopy

and colonoscopy. The complainant testified at trial that during the latter highly invasive medical procedure, while she was helpless under heavy sedation, defendant sodomized her by placing his mouth in contact with her vagina, notwithstanding proof that this area was contaminated with fecal matter produced by the enema-like action of the colonoscope and the patient's inability to tolerate the laxatives that might have alleviated that complication.

In addition to a denial of any wrongdoing, defendant's defense consisted of a frontal attack on the complainant's credibility by stressing her strong motive to concoct the charges. The complainant had been evicted from her apartment in July of 1991, and attributed her stomach and depression symptoms to the oppressive conduct of her landlord. Subsequently, she commenced a multimillion dollar lawsuit against the landlord and sought to enlist the aid of defendant as an expert witness to testify on her behalf in order to provide the vital nexus of medical causation in her tort action.

Defendant unsuccessfully sought to convince the jury that the complainant's criminal charges were fabricated to avenge defendant's refusal to aid her prior litigation, and were brought to enhance the prospects of her $10 million lawsuit against him for sexual assault, which was pending at the time of this trial. She realized, of course, that a criminal conviction would relieve her of the burden of establishing liability in her civil action, leaving only the issue of monetary damages.

Obviously, these charges of deviate sexual conduct by a doctor upon a helpless patient would inevitably arouse a strong emotional repugnance, and it was essential that they be considered by the jury in a dispassionate manner free of prejudicial distraction. Unfortunately, the course deliberately chosen by the Assistant District Attorney prosecuting this case made that impossible.

Prior to defendant's taking the stand as a witness in his own behalf, the court held a *Sandoval* hearing outside the jury's presence. The prosecutor sought leave to cross-examine the doctor upon an alleged romantic relationship with a female patient ("AH") from March through July 1991. In her initial presentation, the prosecutor sought to inquire whether, on a final office visit, defendant had "masturbated in front of" the partially disrobed AH. While the trial court, in its pretrial *Sandoval* ruling, had allowed a limited inquiry into the AH affair, it *explicitly* excluded any reference to masturbation as too inflammatory. The court further directed that if the prosecutor

thought that defendant, in answering, "opened the door" beyond the limits set, she would be required to seek a ruling *outside the presence of the jury* and I will address it at that time." (Emphasis added.)

Undeterred by these meticulous instructions and apparently angered by defendant's alleged lack of memory with respect to AH, the prosecutor inquired of him as follows:

"Q. Do you remember * * * at any point a woman in November of '91 coming into your office at Central Park West and that you took her shirt off and fondled her breasts?

"A. Absolutely not.

"Q. And you don't remember at any point masturbating?"

Defense counsel immediately moved for a mistrial, arguing at length that the masturbation question caused the jury to become "sullen," and cast a continuing pall over the courtroom. The trial court agreed that "masturbation" is a "buzzword," and the image of defendant masturbating in front of a patient in the office would be "something the jury would remember." Nonetheless, the motion was denied with a curative instruction to the jury.

■ On appeal, the People are unpersuasive in minimizing the poisonous impact of the prosecutor's intentional misconduct. Not surprisingly, they point to the curative instruction given by the court to the jury in a futile attempt to "unring the bell." But as the Trial Judge herself acknowledged to the jurors about the masturbation question, "I know the longer I talk about it the harder it is to put it out of your mind." Simply put, this bell had tolled, ringing a sad curfew to the notion of a fair trial.

In *People v Cavallerio* (71 AD2d 338), the prosecutor elicited that both defendants had been previously charged with rape, in similar defiance of a pretrial *in limine* ruling. There we held (at 342) that "no amount of curative instruction could sufficiently erase from the jurors' minds the damaging statements presented," noting the "devasting" effect of improperly placing before the jury unproven allegations of sexual misconduct. While the ruling in *Cavallerio* applied to the testimony of the complaining witness, the principle is all the more applicable to the current situation where a defendant takes the stand in reliance on the court's unambiguous ruling (*see, e.g., People v Martin*, 172 AD2d 268; *People v Gottlieb*, 130 AD2d 202).

■ Another error occurred following the testimony of character witnesses called by defendant. At the request of the

prosecutor, and over defense objection, two of these witnesses were excluded from the courtroom after completion of their testimony. No inquiry was conducted to establish the need for such exclusion (*People v Jones*, 47 NY2d 409, 414-415, *cert denied* 444 US 946), nor did the court articulate any factual findings to support such a limited closure (*see, People v Tolentino*, 90 NY2d 867, 869). Indeed, there was agreement among the court and counsel that the testimony of these witnesses was finished and they would not be subject to recall. This ruling improperly infringed upon defendant's right to a public trial (*People v Clemons*, 78 NY2d 48, 53; *People v Lopez*, 185 AD2d 189, *lv denied* 80 NY2d 975).

■ A final set of errors arose from the trial court's rulings unreasonably curtailing defense cross-examination of the complainant. Essentially, this was a one-witness case, where the credibility of the two people involved was the paramount issue for the jury to resolve. When defendant sought to cross-examine the complainant upon alleged perjury regarding her landlord-tenant case at an administrative hearing, prior meritless lawsuits by her and her straitened financial circumstances, these topics were precluded based on "policy" considerations expressed by the court throughout the trial, namely, that sex-crime victims deserve special protection from rigorous inquiry in order to encourage other similar victims to "come forward." While pursuit of this goal may have been well intentioned,* the result was to deprive defendant of his right of confrontation under the Sixth Amendment (*People v Carter*, 86 AD2d 451).

The trial court overlooked the statute in which the Legislature has fully expressed both the policy and its limitations in protecting sex-crime victims from needless embarrassment upon cross-examination. The "rape shield law" (CPL 60.42) has severely restricted impeachment of the victim by use of prior *sexual* history (with very carefully defined exceptions). But nothing in that law, or any other pertinent authority, provides a protective cocoon for alleged sex-crime victims against all other standard forms of impeachment, including those tending to show bias, hostility or monetary incentive to fabricate.

---

* Voltaire, for example, gave early recognition to this sentiment. After learning that the British admiralty had court-martialed and executed Admiral John Byng in 1757 for neglect of duty in failing to relieve the French siege of Minorca, the sage explained: "In this country [England] it is thought well to kill an admiral from time to time *pour encourager les autres*." (Candide, ch 23.)

■ Finally, defendant's conviction for falsifying a business record (an entry in the complainant's medical chart) must also be vacated and remanded for a new trial, inasmuch as an essential element of guilt under Penal Law § 175.10 was, in this case, concealment of commission of the alleged sexual offense.

Accordingly, the judgment of the Supreme Court, New York County (Marcy Kahn, J.), rendered on or about September 6, 1996, convicting defendant of sodomy in the first degree and falsifying business records in the first degree and sentencing him to concurrent terms of 3⅓ to 10 years and 1⅓ to 4 years, respectively, should be reversed, on the law, and the matter remanded for a new trial.

SULLIVAN, J. P. (dissenting). Much of the majority's recitation of the facts is taken from defendant's own self-serving testimony, which, to the extent it was introduced to show the improbability of the incident or the complainant's motive to fabricate the charges, was rejected by the jury. Suffice to say, defendant does not challenge the legal sufficiency of the evidence or assert that the verdict was against the weight thereof, although, in urging numerous alleged errors as affecting the verdict, he does argue that the People's case had "major weaknesses" and problems. Nothing that he points to, however, in any way suggests a lack of evidence to support the verdict.

The complainant testified that, after receiving a sedative administered by defendant, she had fallen asleep and that, when she awoke, his mouth was on her vagina. She also testified that her sedated state had impeded her efforts to force defendant to terminate his improprieties. In that regard, both the People's expert and defendant's expert agreed that it was possible for a patient who had received medication similar to that received by the complainant to recall events occurring during the period of sedation and yet, by reason of the medication, be unable to resist or take part in those events. Both defendant and his staff testified that the curtain separating the examination room from the rest of the office was almost completely closed during the procedure involving the complainant, and that no one else, besides defendant, was present. If credited, as it was, the complainant's testimony, by itself, would prove defendant's guilt (see, People v Arroyo, 54 NY2d 567, 578, cert denied 456 US 979). Sodomy in the first degree is committed by engaging in deviate sexual intercourse with someone unable to consent because of physical helplessness. (Penal Law § 130.50 [2].)

Moreover, other reliable evidence pointed to defendant's guilt. After reporting the matter to the New York State Department of Health Office of Professional Medical Conduct (OPMC) and the police department and speaking with representatives of the District Attorney's office, the complainant, carrying a concealed tape recorder, had an appointment with defendant 3½ months after the incident, in which, after initially denying the accusation, he admitted that he had kissed her at the end of the procedure. The complainant asked defendant to continue to treat her because of his familiarity with her ailments. As the recording of that appointment shows, she never threatened to make a scene; defendant never asked her to leave the office or to seek psychiatric help, as he now claims.

The stark differences between the actual taped conversation and defendant's entry, later that evening, in the complainant's medical records memorializing his version of that conversation—that she threatened to make a scene and he asked her to leave and suggested that she seek psychiatric help—evinced a consciousness of guilt and provided circumstantial evidence of the sodomy. This evidence, specifically, the entry of misleading information in the complainant's medical records, demonstrated defendant's willingness to lie, undermining his credibility, and, combined with the complainant's credible account of the incident, established, as the jury found, not only the sodomy but also defendant's guilt of falsification of business records in the first degree.

Contrary to the majority's determination, the prosecutor's cross-examination of defendant regarding the alleged masturbation incident did not deprive defendant of a fair trial. The court allowed inquiry into defendant's relationship with a female patient, AH, but, "erring on the side * * * of caution", precluded inquiry into defendant's extramarital affair with a nurse in his employ, even though the court agreed that the relationship was deceitful and most likely violated defendant's professional responsibilities. According to the prosecutor, the AH relationship, which included sexual contact in defendant's office during counselling sessions, began in March 1991 and lasted approximately five months. During one encounter, when AH expressed disinterest in defendant's sexual advances, he allegedly masturbated in front of her. One of the sources of the information regarding AH was a long-time patient of defendant and a friend of AH, who told the prosecutor that defendant had admitted the romantic relationship and that he had purchased a $400 dress for AH.

The court's ruling allowing inquiry into the AH relationship was a limited one. The prosecutor could inquire, *inter alia*, as to whether AH sought defendant's help for her sluggishness, the nature of emotional condition when AH began treatment with defendant, whether defendant and AH began a romantic relationship, whether they had sexual contact on more than one occasion in his office during counselling sessions and whether the relationship was ethical. The court explicitly advised the prosecutor not to refer to the masturbation incident, allowing, however, that if on cross-examination of defendant, the prosecutor "feels she's entitled to anything else" beyond the limits of the court's ruling, "she will request argument outside the presence of the jury and I will address it at that time." Prior to defendant's cross-examination, the prosecutor subpoenaed hospital records, which included a letter from AH's husband to the hospital detailing his knowledge of the relationship between defendant and AH. The prosecutor sought to use the letter to "probe [defendant's] memory" in the event he denied the relationship. The court quashed the subpoena, finding that the hospital's confidentiality interests outweighed the prosecutor's interest in the letter.

During cross-examination, defendant did not remember a patient, AH, or whether he had treated her. Needless to say, he did not remember having a sexual relationship with a patient he was counselling. Nor could he remember purchasing a $400 dress for a patient in June 1991. When the prosecutor asked defendant whether he remembered a letter from AH's husband to St. Luke's/Roosevelt Hospital complaining of his relationship with AH, the court sustained defense counsel's general objection and struck the question with the curative instruction to disregard it. After defendant answered that he did not remember a November 1991 incident in which he removed a woman (AH) patient's shirt and fondled her breasts, the prosecutor then asked, "And you don't remember at any point masturbating?" The court sustained defense counsel's objection and instructed the jury to disregard the question; it also denied defendant's motion for a mistrial. In its curative instructions, the court told the jury that the question was "legally improper" and "inappropriate" and in violation of its instructions to the parties and its pretrial rulings. It also told the jury, improperly, in my view, that "[t]here's no evidence in this record that supports that question." Defendant declined any further curative instructions in the charge-in-chief.

It hardly need be stated that cross-examination into professional misconduct is a proper means of impeaching a witness's

credibility. (*See, e.g., United States v Fulk,* 816 F2d 1202, 1206 [7th Cir]; *United States v Weichert,* 783 F2d 23, 25-26 [2nd Cir], *cert denied* 479 US 831.) Thus, defendant's relationship with AH was a proper subject of inquiry. Indeed, if such a relationship existed, defendant's conduct would have constituted a clear breach of his ethical obligations (*see,* Council on Ethical & Judicial Affairs, Code of Medical Ethics: Current Opinions with Annotations, at 130 [1996-1997 ed]) warranting the imposition of a disciplinary sanction (*see,* Education Law § 6509 [9]; 8 NYCRR 29.1 [b] [5]; 29.4 [a] [5] [i]; *Matter of Wharton v Sobol,* 180 AD2d 978, 979, *lv denied* 80 NY2d 752). Defendant's conduct toward AH was particularly probative of his credibility because when he began the romantic relationship with her he was already counselling her for emotional problems, prescribing psychotropic medication. Thus, he knew that AH was in a fragile and highly vulnerable emotional state, of which he, in his position, could take advantage. Such conduct clearly demonstrated his willingness to place his own interests ahead of those of his patients and, to that end, to violate the ethical standards of his profession.

Nor, as the majority holds, was defendant entitled to a mistrial on the basis of the prosecutor's single inquiry into the masturbation incident. The decision to grant or deny a mistrial motion rests within the trial court's discretion, which, in the absence of an abuse, will not be disturbed. (*See, People v Ortiz,* 54 NY2d 288, 292.) Contrary to the court's curative instruction that there was no basis for the question, the prosecutor clearly had a good-faith basis to pursue a line of inquiry beyond the perimeter of the court's *Sandoval* ruling. And, although the prosecutor violated the court's express instruction that she first approach the Bench before inquiring into the masturbation incident, that conduct hardly warranted a mistrial, especially in light of the court's curative instruction, which, as noted, was unnecessarily and overly generous to defendant. The jury could have been told to disregard the question and to draw no inference from the mere fact that it was asked, without telling it that there was no basis for the inquiry.

Nor, in the circumstances, was the inquiry improper. Defendant, in his answers to cross-examination, had opened the door to the question. Defendant stated that he did not remember a patient by the name AH, did not remember having a sexual relationship with a patient he was counselling and did not remember purchasing a $400 dress for AH in June 1991. Stymied by the court's overly restrictive ruling as to the use of

the husband's letter to St. Luke's/Roosevelt Hospital and in an effort to jog the memory of an obviously dissembling defendant in his recollection of events that he would have had to remember had they occurred and by defendant's inability to recall a November 1991 incident involving the fondling of a patient's breasts, the prosecutor was entitled to inquire into the precluded masturbation incident in an effort to obtain a concession from defendant that, indeed, he did remember that he had acted improperly in his relationship with a patient. Thus, the inquiry was permissible, given its relevance to this aspect of the cross-examination, which defendant, by his purported inability to recall, was successfully frustrating.

Of course, it is well established that a defendant is entitled to rely on a *Sandoval* ruling, confident that questions as to matters precluded will not be asked. (*See, People v Moore*, 238 AD2d 228, 229-230, *lv granted* 90 NY2d 867; *People v Owens*, 203 AD2d 106, 107, *lv denied* 84 NY2d 871.) Here, however, defendant was aware that the preclusion of inquiry into the masturbation incident was not final. As the court made clear, defendant, by his answers, could open the door to such questioning. In any event, a testifying defendant is obliged to speak truthfully and cannot use a favorable *Sandoval* ruling as a shield to prevent appropriate impeachment. (*See, People v Wilkens*, 239 AD2d 105, *lv denied* 90 NY2d 899; *People v Reed*, 232 AD2d 343, *lv denied* 89 NY2d 945.) A defendant who gives misleading testimony opens the door to a modification of the *Sandoval* ruling. (*People v Laguer*, 183 AD2d 485, *lv denied* 80 NY2d 905; *People v Santiago*, 169 AD2d 557, 558, *lv denied* 77 NY2d 1000.)

Here, as the prosecutor well knew and the trial court, in ruling on the mistrial motion, expressly recognized, defendant's testimony that he could not recall AH or of having any relationship with her was patently misleading. In such circumstances, the prosecutor was entitled to inquire into matters, otherwise precluded, to force defendant to concede that he remembered at least one incident from his relationship with AH. (*See, People v Schwartzman*, 24 NY2d 241, 244, *cert denied* 396 US 846; *People v Gordon*, 202 AD2d 166, 168, *lv denied* 83 NY2d 911.)

Nor, given the court's curative instruction after the court struck the masturbation question and its instructions throughout the trial and charge-in-chief, could defendant have suffered prejudice from the mere question. In its preliminary instructions and repeatedly throughout the trial, the court reminded

the jury that a question without an answer was not evidence and that it was not to infer anything from the mere asking of a question. Moreover, as noted, the court, in its curative instruction advising the jurors that "[t]here's no evidence in this record that supports that question", gave defendant more than that to which he was entitled. Defendant never challenged the People's good faith in delving into the subject. The only objection raised was as to prejudice. Moreover, the court expressly found that the challenged inquiry was pursued in good faith.

In the instant matter, the jury's adherence to the trial court's instructions, which is presumed, and the lack of prejudice from the mere asking of the question are best illustrated by the jury's acquittal of defendant of the sexual abuse charge, premised on contact between his fingers and complainant's vulva. If, as the majority concludes, "[the] bell had tolled" as a result of the mere asking of the masturbation question, the jury would likely have convicted defendant of all the submitted charges. Finally, it should be noted, there was a five-day interval between the challenged inquiry and jury deliberations, during which an additional 12 witnesses testified and the People presented a rebuttal case. In her summation, the prosecutor never alluded to any portion of the line of inquiry as to defendant's relationship with AH. Thus, the People's attenuation argument is well taken.

The majority also finds fatal error, of constitutional dimension, in the trial court's exclusion of two of defendant's character witnesses from the courtroom after they had testified. After being alerted to their presence by the court, the prosecutor asked that the witnesses be excluded from the courtroom. In ruling on defense counsel's objection, the court noted that, in general, witnesses were not permitted in the courtroom either before or after testifying. Justifying its exclusion order, the court noted that in the latter instance the witness is subject to recall.

While a defendant has a fundamental right to a public trial, the right is not absolute and a court retains the inherent power to exclude spectators " 'to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice.' " (*People v Hinton*, 31 NY2d 71, 74, *cert denied* 410 US 911, quoting *People v Jelke*, 308 NY 56, 63.) The sequestration of witnesses before and after their testimony is a well-recognized device to preserve the search-for-truth function of the trial process. (*See, Geders v United States*, 425 US 80, 87; *People v Sayavong*, 83 NY2d 702,

708.) The decision to exclude spectators from the courtroom rests in the sound discretion of the trial court. (*People v Kin Kan*, 78 NY2d 54, 57; *People v Hinton, supra*, at 74.)

Nor, as defendant argues, is it well established that the witness exclusion rule does not apply to character witnesses. While there is limited Federal authority for the principle that witness sequestration rules do not apply to rebuttal witnesses (*see*, *United States v Bramlet*, 820 F2d 851, 855 [7th Cir], *cert denied* 484 US 861) and, according to a broader line of authority, to an expert witness (*supra*, at 855; *see*, *People v Santana*, 80 NY2d 92, 100), there is no authority, whatsoever, for the proposition that such rules do not, generally, apply to character witnesses. The reason is clear. There may be occasions in which a character witness's presence in the courtroom while other witnesses testified, whether before or after the character witness's testimony, could impair the trial's truth-seeking mission.

Thus, even though the two witnesses had finished testifying, the court, recognizing that they were subject to recall, appropriately exercised its discretion in excluding them from the courtroom. Nor was the ruling broader than is constitutionally permissible. The courtroom was never closed to all spectators. Exclusion was extended merely to all witnesses. This Court has repeatedly upheld similar exclusion orders. (*See, e.g.*, *People v Roundtree*, 234 AD2d 58, *lv denied* 89 NY2d 988; *People v Santana*, 180 AD2d 537, 538, *lv denied* 79 NY2d 1007.)

Finally, the majority finds reversible error in the trial court's curtailment, assertedly in violation of defendant's constitutional rights, of defense counsel's cross-examination of the complainant. During cross-examination, counsel sought to inquire into the complainant's status as a defendant in several lawsuits, the garnishment of her wages, her alleged inability, on approximately 20 occasions, to cover checks she had issued, her default on a loan, the existence of judgments against her and her civil lawsuit against defendant based upon the incident involved in this prosecution. The trial court ruled that defendant could inquire into the complainant's lawsuit against her landlord, her belief that defendant's testimony was vital to the success of that lawsuit and her knowledge that he had refused to testify, her lawsuit against defendant, based on the sexual assault, seeking a substantial amount of money, and the complainant's understanding that a conviction would greatly enhance her chances of success in that lawsuit. The court, however, precluded further inquiry into the details of the two lawsuits, including the amount of damages sought.

Defense counsel subsequently sought to cross-examine the complainant as to three occasions in which she had allegedly given false testimony. In her deposition in the eviction proceeding she denied that she had received notice of the pending eviction or of her landlord's dispute as to the amount of rent owed, assertions, which, according to defendant, were directly refuted by documentary evidence, i.e., an affidavit of service filed in the eviction proceeding and the complainant's testimony at the OPMC disciplinary hearing involving defendant.

The two other falsehoods involved the complainant's testimony at the OPMC hearing, namely, her insistence that she was current in her rent payments at the time of her eviction, which, she claimed, was brought about by computer error. Nor, although she "may have bounced a check or two", could the complainant recall how many of her checks were dishonored. According to defendant, an affidavit executed by the complainant in the eviction proceeding refuted the former while bank records belied the latter assertion.

The court permitted cross-examination into the complainant's deposition denial that she had not received notice of either her pending eviction or of her landlord's dispute with her as to the amount of rent owed but precluded any characterization of her testimony, arguably false, as perjurious and any mention of the proof of service affidavit because it was not inconsistent and involved a collateral matter. Similarly precluded was any inquiry into the alleged falsehoods in the complainant's OPMC hearing testimony.

While it is axiomatic that a defendant has a constitutional right to confront the witnesses against him, which includes the opportunity to cross-examine them (*Davis v Alaska*, 415 US 308, 315-316), that right is not absolute. A trial court is vested with "wide latitude" in imposing reasonable limits on cross-examination that is only marginally relevant or unduly harassing, confusing or repetitive. (*Delaware v Van Arsdall*, 475 US 673, 679.) A trial court's ruling will be disturbed only in the event of an abuse of discretion. (*People v Caviness*, 38 NY2d 227, 232.)

Measured by these principles and contrary to the majority's holding, defendant's confrontation rights were fully protected. Defendant was afforded ample opportunity, of which he took full advantage, to cross-examine the complainant extensively as to her motive and credibility. She was cross-examined about her eviction lawsuit, in which she sought a "great deal of money", and defendant's role in that lawsuit. She admitted that

she sued defendant for a "large sum of money" and believed that his conviction would be helpful to her in that lawsuit. Defense counsel used this evidence to show a motive to fabricate the sexual assault charge that was in no way weakened by the court's ruling that barred elicitation of the specific amounts sought in the two lawsuits, amounts that were speculative and, in light of the evidence that a substantial amount of money was sought, would have added little, if anything, to the jurors' assessment of motive.

Despite the dubious probative value of the evidence sought and its collateral nature, defense counsel was also given wide latitude to impeach the complainant with inconsistent statements she had allegedly made on prior occasions, as well as with omissions in various pretrial statements to criminal and civil investigators. Defense counsel questioned her about alleged false testimony given in a deposition in the eviction lawsuit, even though it is far from clear that the evidence offered in support of the perjury claim demonstrated that the complainant's deposition testimony had been false. At most, what was demonstrated was a prior inconsistent statement rather than a perjurious one.

With respect to the affidavit filed in Housing Court, it neither refuted nor contradicted the complainant's hearing testimony that she had paid her rent and was not in default at the time of her eviction. In her affidavit, she merely stated that her landlord had, in the past, accepted late rent payments from her. She said nothing about her current rent status. Nor, when read in context, was the complainant's OMPC testimony regarding the number of dishonored checks she had written demonstrated to be false by the bank records.

The trial court did not err when it excluded cross-examination into the complainant's past financial condition, such as her cancelled credit cards, the civil judgments against her and the 20 dishonored checks that she had issued over the past five years. The proffered evidence, relevant to the complainant's finances and spending habits, was not necessarily probative of her credibility. (*See, e.g., People v Heiss*, 221 AD2d 562, 563, *lv denied* 87 NY2d 1020; *People v Buggs*, 109 AD2d 1052, *lv denied* 65 NY2d 692.) Nor was it relevant to a motive to fabricate since any connection between the complainant's past financial difficulties and a scheme to accuse defendant falsely of a sexual assault in order to obtain a money judgment so as to alleviate that hardship is too tenuous to be relevant. (*See, People v Thomas*, 46 NY2d 100, 105, *appeal dismissed* 444 US 891; *cf., People v Hudy*, 73 NY2d 40, 56-57.)

There is no merit to the other issues raised by defendant. Accordingly, the judgment of conviction should be affirmed.

ROSENBERGER and ELLERIN, JJ., concur with WALLACH, J.; SULLIVAN, J. P., and MILONAS, J., dissent in a separate opinion by SULLIVAN, J. P.

Judgment, Supreme Court, New York County, rendered on or about September 6, 1996, reversed, on the law, and the matter remanded for a new trial.