OPINION OF THE COURT
Titone, J.
The right to a public trial (US Const 6th Amend; Civil Rights Law § 12; Judiciary Law § 4),[1] although firmly rooted in our law, is neither inflexible nor absolute, and at times must be balanced against other competing interests which are essential to the fair administration of justice. The present appeal requires us to consider whether, in context of this rape prosecution, that balance was properly struck when the trial court, after conducting no more than a perfunctory inquiry of *50 counsel and without articulating any basis for its ruling on the record, ordered that the public be excluded from the courtroom during the complainant’s testimony. For the reasons that follow, we conclude that it was not.
I
In May of 1988, an Onondaga County Grand Jury returned a five-count indictment against defendant, charging him with, among other crimes, rape in the first degree (Penal Law § 130.35 [1]), sexual abuse in the first degree (Penal Law § 130.65 [1]) and kidnapping in the second degree (Penal Law § 135.20). Each of these charges arose out of defendant’s alleged rape and abduction of a young woman from the Syracuse area.
At defendant’s trial, prior to the complainant testifying, the following colloquy took place between the presiding Judge and counsel:
"the court: Ms. Dougherty [prosecutor], it’s my understanding you’re going to make application to close the Court Room to the public during the testimony of the victim in this case, is that correct, ma’am?
"ms. dougherty: Yes, Your Honor.
"the court: And that’s as a result of her request to have that done?
"ms. dougherty: Yes, Your Honor, she has made that request, that she would ask the Court to keep the Court Room closed because of the nature of her testimony.
"the court: Mr. Cognetti [defense counsel]?
"mr cognetti: I would oppose that, Judge. * * *
"the court: I’m going to close the Court Room down.”
Defendant was subsequently convicted of each of the charges noted above.
On appeal, however, the Appellate Division, with one Justice dissenting, reversed and ordered a new trial. The majority concluded that defendant’s Sixth Amendment right to a public trial had been violated, since, in its view, the trial court had neither made a careful enough inquiry to determine if closure of the courtroom was actually warranted under the circumstances, nor articulated any basis for its decision on the record. A Justice of the Appellate Division subsequently granted the People leave to appeal to this Court. We now affirm.
*51 II
Although of uncertain origin, "the right to a public trial has long been regarded as a fundamental privilege of the defendant in a criminal prosecution.” (People v Jelke, 308 NY 56, 61; see generally, Richmond Newspapers v Virginia, 448 US 555, 564-569.) Its significance has been attributed to a number of factors, foremost of which is the need to ensure that an accused is dealt with fairly and not unjustly condemned (see, Estes v Texas, 381 US 532, 538-539; People v Hinton, 31 NY2d 71, 73, cert denied 410 US 911; 1 Cooley, Constitutional Limitations, at 647 [8th ed 1927]). In this regard, it has been said that: "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.” (In re Oliver, 333 US 257, 270.) Similarly, it has been recognized that open trials tend to promote "testimonial trustworthiness” by inducing a fear that perjured testimony might be detected (People v Jones, 82 AD2d 674, 677, lv denied 55 NY2d 751, citing People v Jelke, 308 NY, at 62-63, supra), and may even lead previously unknown persons to come forward with relevant evidence (see, Richmond Newspapers v Virginia, 448 US, at 570 n 8, supra, citing 6 Wigmore, Evidence § 1834, at 436 [Chadbourn rev 1976]).
The presumption of openness, however, is not absolute and must in certain circumstances give way to other competing societal concerns (see, Waller v Georgia, 467 US 39, 45, 48; People v Jones, 47 NY2d 409, 413, cert denied 444 US 946; People v Hinton, 31 NY2d, at 73-74, supra; People v Jelke, 308 NY, at 63, supra; see also, People v Kin Kan, 78 NY2d 54 [decided today]).[2] Accordingly, we have upheld temporary closures of the courtroom in a number of instances, including where necessary to shield the identity of a police officer involved in an ongoing undercover operation (see, e.g., People v Hinton, 31 NY2d 71, supra), or where needed to protect a witness from an "incapacitating embarrassment” (see, People v Mateo, 73 NY2d 928, 930).
In doing so, however, we have always emphasized that no *52 closure "can be tolerated that is not preceded by an inquiry careful enough to assure the court that the defendant’s right to a public trial is not being sacrificed for less than compelling reasons” (People v Jones, 47 NY2d, at 414-415, supra). Indeed, the Supreme Court has made it quite clear that closure determinations must depend on a close examination of the competing interests at stake in the specific context of the individual case (see, Globe Newspaper Co. v Superior Ct., 457 US 596, 607-608).[3] That Court has likewise held that a trial court must articulate its reasons for ordering closure on the record, and those reasons should be expressed in " 'findings specific enough [so] that a reviewing court can determine whether [that] order was properly entered.’ ” (Waller v Georgia, 467 US, at 45, supra, quoting Press-Enterprise Co. v Superior Ct., 464 US 501, 510; see, Rovinsky v McKaskle, 722 F2d 197, 200, and n 10 [5th Cir]; State v Klem, 438 NW2d 798, 801 [Sup Ct ND]; accord, Globe Newspaper Co. v Superior Ct., 457 US, at 608, n 20, supra; Richmond Newspapers v Virginia, 448 US, at 580-581, supra [plurality opn].)[4]
III
Applying these principles to the case at bar, we conclude that defendant’s Sixth Amendment right to a public trial was clearly violated. Although a trial court is not "without discretion to choose among alternative means for determining whether an application to close a courtroom” should be granted (People v Jones, 47 NY2d, at 414, supra), here the record discloses that closure was ordered solely on the basis of a brief colloquy between the presiding Judge and counsel during which the prosecutor merely informed the court that the complainant desired that the courtroom be closed while she testified because of the subject matter of her testimony. Inexplicably, the court did not conduct any further inquiry concerning the nature and degree of any psychological or emotional impact testifying in open court would have on the witness (cf., People v Joseph, 59 NY2d 496 [Trial Judge conferred with complainant and counsel in robing room]). Nor *53 does the record indicate that the Judge had any other basis for adequately assessing what that effect would be (cf., People v Glover, 60 NY2d 783, 785 [Trial Judge had presided over defendant’s previous trial on the same charges and thus knew of the highly embarrassing nature of the complainant’s testimony]; People v Jones, 82 AD2d, at 680, supra [Trial Judge, prior to ordering closure, had observed the witness testify in a very distressed and upset manner about the events leading up to the actual sexual assault]). Instead, closure was ordered "almost casually on little more than the bare application” of counsel (People v Cordero, 150 AD2d 258, 259, affd 75 NY2d 757), and without the trial court articulating any reasons for its decision.
While the Sixth Amendment does not require a judicial insensitivity to the very real problems that rape victims may face in having to testify in open court (see, People v Jones, 82 AD2d 674, supra; see also, People v Glover, 60 NY2d 783, supra; People v Joseph, 59 NY2d 496, supra; United States ex rel Latimore v Sielaff, 561 F2d 691, 694-695 [7th Cir], cert denied 434 US 1076),[5] it nonetheless does demand a more careful balancing and weighing of the competing interests than that conducted by the trial court here (see, Waller v Georgia, 467 US, at 45, supra; People v Mateo, 73 NY2d 928, affg 138 AD2d 412, supra; People v Jones, 47 NY2d, at 414-415, supra; see also, Globe Newspaper Co. v Superior Ct., 457 US, at 607-608, supra).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. The Sixth Amendment’s public trial guarantee has been made applicable to the States through the Due Process Clause of the Fourteenth Amendment (see, Duncan v Louisiana, 391 US 145, 148; In re Oliver, 333 US 257, 266-273; People v Jones, 47 NY2d 409, 411, n 1, cert denied 444 US 946).

. The Supreme Court has essentially adopted a four-part test for determining whether the public may be excluded from part of an accused’s trial: (1) the party seeking to close the courtroom must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than is necessary to protect that interest; (3) reasonable alternatives to closing the courtroom must be considered; and (4) the trial court must make findings adequate to support the closure (Waller v Georgia, 467 US 39, 48).

. See also, State v Klem, 438 NW2d 798, 801-802 (Sup Ct ND).

. While Globe Newspaper Co. v Superior Ct. (457 US 596), Press-Enterprise Co. v Superior Ct. (464 US 501) and Richmond Newspapers v Virginia (448 US 555) were all decided under the First Amendment, the Supreme Court has expressly acknowledged that the holdings of these cases are equally relevant in the Sixth Amendment context (Waller v Georgia, 467 US 39, 46).

. See generally, Berger, Man’s Trial, Woman’s Tribulation: Rape Cases in the Courtroom, 77 Colum L Rev 1 (1977); Bohmer & Blumberg, Twice Traumatized: The Rape Victim and the Court, 58 Judicature 390 (1975).