THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
FREDDY GROSS, Appellant.

First Department, April 16, 1992

### APPEARANCES OF COUNSEL

*Camille Weithers* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Richard Sheridan* of counsel *(Susan L. Valle* with him on the brief; *Robert T. Johnson, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

MILONAS, J. P.

The Trial Judge's decision to close the courtroom to the public during the testimony of the undercover officer was not, under the circumstances herein, improper. In that regard, the following exchange took place when the prosecutor made his application for closure:

"ADA: Your Honor, I spoke to the witness in this case, who is an undercover officer, female—

"THE COURT: Jacqueline Sanchez.

"ADA: and she currently works in the Bronx Tactical Narcotics Team and—

"THE COURT: TNT.

"ADA: Bronx TNT and she's still working on the street, in the field and in fact—

"THE COURT: In the field or undercover?

"ADA: As an undercover.

"THE COURT: All right.

"ADA: And she indicated to me that she was—she would be very reluctant to testify unless the courtroom is closed to any and all individuals, other than the defendant and court personnel and at this time I am asking Your Honor to close the courtroom to people, other than the court personnel and the defendant.

"THE COURT: Mr. Blitz?

"MR. BLITZ: I would respectfully object to that, Your Honor. This is a public trial and * * * there is nobody in the courtroom except the court personnel and the defendant and myself.

"THE COURT: Let me say at this time there is nobody here but—

"MR. BLITZ: And the clerk.

"THE COURT: This is a drug part and I do have two other cases on today and I did ask one defendant * * * to come back at two o'clock and I have another case here * * * which I believe is a defendant who is not incarcerated and should be coming in and my part basically is a long-term narcotics part and almost exclusively I might add all defendants coming into this part are accused of either possession, of possession of or felony sale of drugs and felony possession and sale * * * So for that reason, it is likely that someone could come in here who might have dealt with the undercover or who might deal with her in the future. So I feel under the circumstances, I will close the courtroom during her testimony.

"MR. BLITZ: I respectfully except.

"THE COURT: Okay, bring down the jury."

The People then called Officer Jacqueline Sanchez to the stand. In response to the prosecutor's inquiries, she explained that she had been a police officer for 4½ years during which time she was assigned first to Bronx Narcotics and then to the Major Case Unit. At Bronx Narcotics she worked undercover but the nature of her duties at the Major Case Unit, to which she was transferred subsequent to her buy and bust in the present matter, is not specified in the record. Thus, it is uncertain whether Officer Sanchez was still involved as an undercover with illicit drug activities. In any event, as of the date of the trial, she had made over 150 buys. She described her undercover duties as requiring her "to dress like an undercover and go to drug locations, known drug locations and attempt to purchase narcotics from any individuals who are selling narcotics." She "received training in One Police Plaza, prior to becoming an undercover. They teach you how to dress like an undercover, how to act as an undercover, different types of narcotics, what the names are, how to identify individuals that are selling narcotics, how you know [to] go into a narcotic location and act like you belong there, as an undercover."

It is significant that defense counsel, who confined himself to registering a single general objection, did not request permission to question Officer Sanchez before the court rendered its decision on the People's motion for closure. Defendant's lawyer also made no effort, once she took the stand, to

ascertain whether she was still engaged in undercover work in the Major Case Unit so that he could renew his objection to closure in the event that her duties had changed. Yet, defendant urges that his conviction be reversed for no other reason than the trial court's failure to make a more thorough inquiry notwithstanding that Officer Sanchez's employment as a major undercover operative was never contradicted. In that regard, there is no legal authority that mandates such a result.

In *People v Clemons* (78 NY2d 48, 52), the Court of Appeals held that closure was improper where, in a rape prosecution, "closure was ordered *solely* on the basis of a brief colloquy between the presiding Judge and counsel during which the prosecutor merely informed the court that the complainant desired that the courtroom be closed while she testified because of the subject matter of her testimony". Unlike the situation at issue here, where there was real concern about both the physical safety of the undercover officer and the continuing viability of other cases in which she was expected to testify, *People v Clemons (supra)* concerned only the negative psychological or emotional impact claimed by the witness therein if she were compelled to testify in open court. In that connection, the Court of Appeals observed, closure demanded "a more careful balancing and weighing of the competing interests" *(People v Clemons, supra,* at 53) than the extremely limited examination conducted by the Trial Judge.

Similarly, *People v Kin Kan* (78 NY2d 54) is inapplicable to the present matter. In that case, the trial court directed that the courtroom be closed to all spectators, including defendant's family, during the testimony of the cooperating accomplice and two undercover police officers. The Court of Appeals determined that excluding family members was contrary to all four of the prerequisites enunciated by the United States Supreme Court in *Waller v Georgia* (467 US 39) for assessing the propriety of closure, as follows: "(1) the party seeking to close the hearing must advance an *overriding interest* that is likely to be prejudiced; (2) the closure must be *no broader than necessary* to protect that interest; (3) the trial court must consider *reasonable alternatives* to closing the proceeding; and (4) the trial court must make *findings adequate to support the closure" (People v Kin Kan, supra,* at 58). Most particularly, the expulsion of everyone during the accomplice's testimony was, the Court of Appeals concluded, broader than constitutionally acceptable since there was no justification for disallowing the presence of defendant's family in the absence of

any evidence that her family had ever attempted to intimidate or harass the accomplice. In contrast, the instant case involves the closure of the courtroom doors of a narcotics part to prohibit access to the general public during the testimony of the undercover officer in order to protect her confidentiality. There was certainly no question of ejecting defendant's family or anybody else having a personal interest in the proceedings, and it is difficult to perceive how the court's decision to preclude general admission to a narcotics part while the undercover took the stand was prejudicial to defendant.

In *People v Jones* (47 NY2d 409), the Court of Appeals specifically considered the issue of the appearance of an undercover agent when it could endanger his or her life or seriously damage other investigations. According to the court, although closure is not sanctioned merely because an undercover officer is called to the stand, "a trial court would not appear to be without discretion to choose among alternative means for determining whether an application to close a courtroom is meritorious" *(People v Jones, supra,* at 414). Included among these approaches, "there are times when careful inquiry directed at counsel, the witness, *or* even the spectators present in the courtroom might be enough" *(People v Jones, supra,* at 414 [emphasis added]). Therefore, representations made by the District Attorney, who is, after all, an officer of the court and under an obligation to be truthful, that the witness is engaged as an undercover and reluctant to testify in public are sufficient to support closure when, as here, the case is being tried in a narcotics part, and it is anticipated that drug dealers, some of whom may have come into contact with the undercover, might have occasion to enter the courtroom as defendants or for some other purpose. Indeed, the court explained that it had two other matters on the calendar that day, and it was "likely that someone could come in here who might have dealt with the undercover or who might deal with her in the future."

As the Court of Appeals stated in *People v Cuevas* (50 NY2d 1022, 1024), "[t]he court may upon application by the prosecutor exclude the public from a portion of the trial during the testimony of an undercover agent in order to protect the integrity of pending investigations, as well as the witness' future usefulness, or to insure his safety from possible reprisals". However, unlike the situation in *People v Cuevas (supra,* at 1024), where "the District Attorney sought to have the courtroom closed solely on his representation that the witness

was an undercover officer" which the court considered inadequate by itself to warrant closure, the prosecutor here not only described the undercover's reluctance to testify in open court, but the proceedings were being conducted in a narcotics part, and other defendants of drug cases were expected that same day. Moreover, as the Trial Judge indicated, it was certainly very possible that a dealer or user with whom Officer Sanchez had dealt in the past would enter the courtroom at some point while she was on the stand.

Finally, this matter is also distinguishable from *People v Cordero* (150 AD2d 258, *affd* 75 NY2d 757) since what occurred therein was a pro forma closure of the courtroom based on nothing more than the District Attorney's statement that it was necessary to protect the identity of the undercover officer, who was involved in an ongoing narcotics investigation, and there were several drug parts on the same floor of the courthouse. Thus, the prosecutor asserted, although it was unlikely, he could not be certain that " 'a potential defendant or a defendant might walk into the courtroom' " *(People v Cordero, supra,* at 258). In the situation before us now, on the other hand, the trial was being held in an active narcotics part in which, the court noted, there were two other cases on the calendar that day, and it was clear that the undercover officer had participated in numerous drug transactions. Despite the fact that the record is silent as to whether Officer Sanchez still worked in the field with narcotics dealers at the time of the trial, it should be reiterated that defendant's attorney made no effort to elucidate the witness' present status even when she stated that she had been transferred to the Major Case Unit; nor did he renew his objection to the closure order. Indeed, it is possible that further questioning by defense counsel might have elicited information that Officer Sanchez was involved in higher level undercover narcotics transactions. Consequently, under the circumstances herein, the trial court's exercise of discretion did not constitute reversible error.

Accordingly, the judgment of the Supreme Court, Bronx County (Arlene Silverman, J.), rendered on January 23, 1990, convicting defendant, following a jury trial, of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree and sentencing him, as a second felony offender, to two concurrent terms of imprisonment of from 5 to 10 years to run concur-

rently with a term of imprisonment of from 4 to 8 years, should be affirmed.

Judgments of the Supreme Court, Bronx County (Arlene Silverman, J.), rendered on January 23, 1990, convicting defendant, upon his plea of guilty, under each of two separate indictments, to two counts of attempted sale of a controlled substance in the third degree and sentencing him, as a second felony offender, to concurrent terms of imprisonment of from 5 to 10 years on each count to run concurrently with his sentences of conviction after trial, should be affirmed.

ELLERIN, KUPFERMAN, ROSS and RUBIN, JJ., concur.

Judgments of the Supreme Court, Bronx County, rendered on January 23, 1990, convicting defendant of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third and fourth degrees, and two counts of attempted criminal sale of a controlled substance in the third degree, and sentencing him, as a predicate felon, to two terms of imprisonment of 5 to 10 years, one term of 4 to 8 years, and two terms of 5 to 10 years, respectively, all sentences to run concurrently, affirmed.