## 513 W. 26th Realty, LLC v George Billis Galleries, Inc.

2024 NY Slip Op 34531(U)

December 30, 2024

Supreme Court, New York County

Docket Number: Index No. 160266/2020

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: __HON. PAUL A. GOETZ__ | PART **47** |
| *Justice* | |

--------------------------------------------------------------------------------X

513 WEST 26TH REALTY, LLC,

Plaintiff,

- v -

GEORGE BILLIS GALLERIES, INC., GEORGE BILLIS, THE
CITY OF NEW YORK,

Defendants.

--------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 160266/2020 |
| **MOTION DATE** | 05/01/2024, 05/15/2024 |
| **MOTION SEQ. NO.** | 003 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 152, 153, 154

were read on this motion to/for                               DISMISS                               .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 144, 145, 146, 147, 148, 149, 150

were read on this motion to/for                               DISMISSAL                               .

 

In this commercial landlord-tenant action between plaintiff-landlord 513 West 26th Realty LLC (plaintiff, or landlord) and defendant-tenant George Billis Galleries Inc. (tenant) and defendant-guarantor George Billis (Billis, or guarantor) the Appellate Division, First Department remanded the case for the record to be developed and a determination made on whether Administrative Code (NYC Admin Law) § 22-1005 (the guaranty law) violates the Contracts Clause of the United States Constitution in light of the recent decision in *Melendez v City of New York* finding the guaranty law unconstitutional (668 F Supp 3d 13 [SDNY 2023]).[1]

---

[1] While plaintiff argued that the guaranty law violates the Contracts Clause of the US Constitution in opposition to the guarantor's motion for summary judgment (MS #2) seeking to dismiss plaintiff's two guaranty causes of action (second cause of action for rent not paid by the tenant and third cause of action for attorneys' fees pursuant to the

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**          **Page 1 of 22**
  **Motion No.  003 004**

1 of 22

## BACKGROUND

The Guaranty Law

In March 2020, in response to the outbreak of the COVID-19 pandemic, the governor of New York issued several executive orders that, *inter alia*, required non-essential businesses to follow in-person limitations, close to the public, or cease operations altogether (NYSCEF Doc No 97). "Since the State-mandated closures reduced or eliminated the ability of many commercial businesses to generate revenue in the short term, affecting their ability to pay rent, business owners who had executed personal guaranties faced personal financial ruin or bankruptcy, not because their business was failing, but because they were legally prohibited from operating" (NYSCEF Doc No 142). In response, the New York City Council proposed the guaranty law, which prevented commercial landlords from holding personal guarantors liable for a business tenant's default in rent payments during the State-mandated closure period.

The guaranty law was jointly sponsored by Council Speaker Corey Johnson and Council Member Carlina Rivera. In introducing the legislation on April 22, 2020, Rivera stated that its purpose was to "ensure [that] city business owners don't face the loss of their businesses and personal financial ruin or bankruptcy as a result of this state of emergency" (NYSCEF Doc No 100, 51:4-11). She stated that the law was necessary because, as a result of the state's closure and reduced capacity orders, "businesses are closing and losing weeks of income through no fault of their own and allowing small business owners to keep their spaces will be integral to the city's ability to recover[] after the virus" (*id.*). Rivera expressed that the guaranty law aimed to "ensur[e] that one day [business owners] may be able to return and relaunch or create a new

---

guaranty agreement), the issue was not yet properly before the court because the City of New York was not yet a party and plaintiff had not yet pled a cause of action challenging the constitutionality of the guaranty law in its complaint (*see* NYSCEF Doc No 1).

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**
**Motion No.  003 004**

**Page 2 of 22**

thriving business in our neighborhoods" (NYSCEF Doc No 102, 30:2-9 [transcript of April 29, 2020 remote hearing before the committee on small business and committee on consumer affairs and business licensing]). She further stated that constituents had reported some landlords using lease guaranties to "go[] after small business owner[s'] life savings and personal assets," with one restaurant owner "getting rent due notices and threats from his landlord that the personal liability clause in his lease will soon be acted upon" (*id.*, 30:10-20).

In considering whether the bill should be enacted, the City Council received input from guarantors, business groups and community organizations, and others involved in small businesses. Robert Bookman, an attorney working with small businesses, testified that "nothing [was] keeping small business owners awake at night more than . . . personal guaranties on commercial leases," and "no one ever contemplated this situation where [tenants] are technically in possession but the government says we cannot operate or only minimally operate" (*id.*, 153:13-24). Bookman urged that business owners were faced with "deciding, should they give the keys back and permanently go out of business or risk another month of personal liability," and thus the guaranty law was critical to prevent "our commercial strips in every neighborhood [from] turn[ing] into ghost towns" (*id.* at 152:2-4, 154:6-10). Business owners stated that enforcement of personal guaranties would cause them to "not only lose [their] business, [] livelihoods and [] investments[], but also spend every other dollar [they] have on commercial rent on a space that is unusable" (NYSCEF Doc No 103, p. 13 [Joseph Conti, Owner of Shuraku Restaurant]; *see also* pp. 107 [Gabriel Stulman, CEO & Founder of Happy Cooking Hospitality stating: "If this bill does not pass, I am at risk of not only losing my restaurants and my income, but beyond that, I am at risk of losing the entirety of my life savings and any and all assets I have until I am personally bankrupt"]).

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**   **Page 3 of 22**
**Motion No.  003 004**

[* 3]                                                        3 of 22

The legislative record also indicated that other individuals and groups opposed the guaranty law. Constituents wrote, *inter alia*, that the bill: "upend[s] the organic solutions that businesses and property owners are engaging in [] and artificially select[s] winners or losers when almost all parties need relief"; "transfer[s] the loss from [guarantors] to [landlords]"; "will set into motion a [] disaster for building owners who will be destroyed by not being able to pay their real estate taxes if a tenant is paying no rent and no tax relief for the building owner is forthcoming"; and should be revised to "take into account the health and financial well-being of both landlords and tenants in crafting legislation," "make it incumbent on tenants to show that they are unable to pay their rent due to COVID-19," and "make arrangements for them to catch up when the economic situation improves" (*id.*).

On May 13, 2020, the Council passed the guaranty law, which provides:

> A provision in a commercial lease or other rental agreement involving real property located within the city that provides for one or more natural persons who are not the tenant under such agreement to become, upon the occurrence of a default or other event, wholly or partially personally liable for payment of rent, utility expenses or taxes owed by the tenant under such agreement, or fees and charges relating to routine building maintenance owed by the tenant under such agreement, shall not be enforceable against such natural persons if the conditions of paragraph 1 and 2 are satisfied:
>
> 1. The tenant satisfies the conditions of subparagraph (a), (b) or (c):
>     a. The tenant was required to cease serving patrons food or beverage for on-premises consumption or to cease operation under executive order number 202.3 issued by the governor on March 16, 2020;
>     b. The tenant was a non-essential retail establishment subject to in-person limitations under guidance issued by the New York state department of economic development pursuant to executive order number 202.6 issued by the governor on March 18, 2020; or

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**
**Motion No.  003 004**

**Page 4 of 22**

      c.   The tenant was required to close to members of the public under executive order number 202.7 issued by the governor on March 19, 2020.

    2.   The default or other event causing such natural persons to become wholly or partially personally liable for such obligation occurred between March 7, 2020 and September 30, 2020, inclusive.

NYC Admin Law § 22-1005. The guaranty law was twice extended so that in its final iteration, it encompassed defaults occurring between March 7, 2020 and June 30, 2021 (the statutory period). In applying these extensions, the Council reiterated its determination that without the law, "the economic and social damage caused to the city will be greatly exacerbated" (NYSCEF Doc No 128 [Local Law 98-2020]). It further noted that the restrictions were likely to "continue for the foreseeable future," and thus extensions were needed to give businesses "a reasonable recovery period . . . to not only survive but also to generate sufficient revenues to defray owed financial obligations" (NYSCEF Doc No 141 [Local Law 50-2021]).

The *Melendez* Decisions

On November 25, 2020, the Southern District Court of New York considered a challenge to the constitutionality of the guaranty law (*Melendez v City of New York*, 503 F. Supp. 3d 13 [SDNY 2020]) (*Melendez I*). Specifically, plaintiff-landlord Bochner argued, *inter alia*, that the law violated the Constitution's Contracts Clause, which provides that "no State shall . . . pass any . . . Law impairing the Obligations of Contracts" (US Const Art 1 § 10). The court applied a three-part test to determine whether the Contracts Clause has been violated, evaluating: "(1) [whether] the contractual impairment [is] substantial and, if so, (2) [whether] the law serve[s] a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) [whether] the means chosen to accomplish this purpose [are] reasonable and necessary" (*Sullivan v Nassau Cty. Interim Fin. Auth.*, 959 F3d 54, 64 [2nd Cir

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**
**Motion No.  003 004**

**Page 5 of 22**

2020], quoting *Buffalo Teachers Fed'n v Tobe*, 464 F3d 362, 368 [2nd Cir 2006]; see also *Energy Reserves Grp. v Kan. Power & Light Co.*, 459 US 400 [1983]). The court determined that the guaranty law is constitutional, holding that "despite [the] showing of substantial impairment" to the underlying contracts at issue, "the Guaranty law is reasonable, necessary, and passed to advance a legitimate public interest," namely, "to prevent New York's small business owners from being 'pushed into both business and personal bankruptcy,' which would eliminate their ability to 'remain[] in or return[] to microentrepreneurship,' and would 'further exacerbat[e] the ongoing economic crisis' for the entire City" (*Melendez I* at 33, 36).

The Second Circuit Court of Appeals reversed the Southern District Court of New York's decision (*Melendez v City of New York*, 16 F.4th 992 [2nd Cir 2021]) (*Melendez II*). Applying the principles of *Home Bldg. & Loan Ass'n v Blaisdell*, 290 US 398 [1934], and its progeny, which "replac[ed] a strict textual view of the Contracts Clause with one that relied on a balancing principle" (*Melendez II* at 1022), the court identified five features of the guaranty law "that preclude[d] dismissal of the Contracts Clause Claim," specifically: (1) the guaranty law was not a temporary or limited impairment of contract; (2) the record was insufficient to support three assumptions upon which the guaranty law was based[2]; (3) the burden of the guaranty law was placed exclusively upon landlords; (4) the City did not condition the application of the guaranty law on need; and (5) the guaranty law does not compensate landlords for damages or losses sustained as a result of their guaranties' impairment (*id.* at 1038-46). The Second Circuit therefore "remand[ed] the case to the district court for it to allow the parties to develop the

---

[2] The three assumptions were: (a) that shuttered small businesses are usually owned by the individuals guaranteeing their leases; (b) that these owner-guarantors would be financially ruined if required to pay their businesses' rent arrears; and (c) that financially ruined owners would be unlikely to reopen shuttered businesses (*id.* at 1040).

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**            **Page 6 of 22**
  **Motion No.  003 004**

6 of 22

[* 6]

record further on issues identified in this opinion as well as any other matters relevant to the claim" (*id.* at 1047).

On remand, by decision and order entered on March 31, 2023, the Southern District held "that the City has been unable to adduce record evidence demonstrating that the Guaranty Law is reasonably tailored to accomplish its legitimate policy goals," and therefore found that the guaranty law violates the Contracts Clause (*Melendez v City of New York*, 668 F Supp 3d 184, 189 [SDNY 2023]) (*Melendez III*). The court found that the City failed to adequately address each of the five concerns identified by the Second Circuit, noting: (1) "landlords are forever barred from recovering rent to which they are entitled from a guarantor during that 16-month period if a tenant is left unable to pay"; (2) "the City cannot demonstrate that it had before it evidence supporting [the assumption] that shuttered small businesses are usually owned by the individuals guaranteeing their leases—nor that it considered evidence justifying why it need not condition the relief of the Guaranty Law on guarantors owning shuttered businesses"; (3) the City's assertions "that similar government pandemic assistance was not accessible to small business tenants" and that "guarantors would have any incentive based on the Law to enter negotiations with landlords regarding unpaid rent" were unsupported; (4) the City enacted the guaranty law without properly tailoring it, even though "a hardship requirement [] was plainly an evident and more moderate course"; and (5) "[t]he fact remains that Plaintiffs here were damaged [] and have not been compensated" (*id.* at 200-06 [internal citations and quotation marks omitted]).

The Instant Action

Plaintiff is the owner of the building located at 525-527 West 26th Street, New York, NY 10001 (NYSCEF Doc No 1 ¶ 2). By lease dated July 2015, plaintiff leased the lower level of the

160266/2020  513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.
Motion No. 003 004

Page 7 of 22

building to the tenant, an art exhibition space, for a ten-year term expiring on August 31, 2025 (*id.* ¶¶ 5-6). The lease was personally guaranteed by Billis (*id.* ¶ 15). Plaintiff alleges that the tenant began to fall behind on its monthly rent payments in September 2017 (NYSCEF Doc No 2 [by March 2020, the tenant was in arrears totaling $289,385.76]).

Plaintiff's complaint, filed on November 25, 2020, included causes of action against the tenant for breach of the lease; Billis, individually, for breach of the guaranty; and both defendants for an award of attorneys' fees (NYSCEF Doc No 1). By decision and order dated July 20, 2021 (after *Melendez I* and before *Melendez II*), this court granted Billis's motion for partial summary judgment seeking dismissal of the causes of action asserted against him on the grounds that they are barred by the guaranty law (MS #2, NYSCEF Doc No 71). On October 19, 2023 (after *Melendez III*), the decision was reversed by the First Department "[i]n view of the recent decision in *Melendez [III]* finding the guaranty law unconstitutional" (*513 W. 26th Realty LLC v George Billis Galleries, Inc.*, 220 AD3d 525 [1st Dept 2023]). The court "remand[ed] the constitutional question raised by the parties here so the parties can further develop the record in the trial court for the purpose of applying the Contracts Clause test for constitutionality" and directed plaintiff to serve notice to the City to allow it to intervene and support its position in favor of the law's constitutionality (*id.*).

The City was permitted to intervene as a defendant (NYSCEF Doc No 91), and by decision and order dated January 26, 2024, this court set a briefing schedule for the parties and permitted parties in nine related actions to file amicus briefs addressing the constitutionality of the guaranty law (NYSCEF Doc No 88). Plaintiff moved for an order declaring the guaranty law unconstitutional (NYSCEF Doc No 94)[3]; the City moved to dismiss the complaint as against it

---

[3] Plaintiff filed its brief under Mot Seq No 2, as it was the decision and order of that motion which was remanded.

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**          **Page 8 of 22**
  **Motion No.  003 004**

[* 8]

8 of 22

and opposed plaintiff's motion (MS #3, NYSCEF Doc No 142); the tenant and Billis moved to dismiss the complaint as against Billis, joined the City's motion, and opposed plaintiff's motion (MS #4, NYSCEF Doc No 146); and Amsterco 67 LLC—a plaintiff in a related case captioned *Amsterco 67 LLC v The Barbers on Amsterdam Corp*, Index No 160262/2021—filed an amicus brief that adopted and joined plaintiff's brief (NYSCEF Doc No 151), to which the City provided a response (NYSCEF Doc No 152).[4]

## DISCUSSION

Preliminary Issues

"All courts are, of course, bound by the United States Supreme Court's interpretations of Federal statutes and the Federal Constitution. On the other hand, the interpretation of a Federal constitutional question by the lower Federal courts may serve as useful and persuasive authority for our Court while not binding us" (*People v Kin Kan*, 78 NY2d 53, 59-60 [1991] [internal citations omitted]; see also *Johnson v Williams*, 568 US 289, 305 [2013] ["the views of the federal courts [] do not bind the [State] Supreme Court when it decides a federal constitutional question" (*Johnson v Williams*, 568 US 289, 305 [2013]). Therefore, the *Melendez* decisions are persuasive, but not binding on this court.

Plaintiff first argues that the City is collaterally estopped from litigating the issue of the constitutionality of the guaranty law because it already had a full and fair opportunity to litigate this exact issue in federal court in *Melendez*. The City correctly argues that the doctrine of collateral estoppel does not apply here because: (i) the other defendants in this case were not parties in *Melendez* and therefore have not had their opportunity to litigate the issue; (ii) the First

---

[4] The City also submitted the decision in *Bochner v City of New York*, 2024 US App LEXIS 25276 [2nd Cir 2024], entered by the Second Circuit Court of Appeals on October 7, 2024 (NYSCEF Doc No 154). However, this decision is not on point, as it was decided on standing grounds rather than the constitutionality of the guaranty law under the Contracts Clause.

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**      **Page 9 of 22**
  **Motion No.  003 004**

9 of 22

Department explicitly directed this court to allow the City to intervene and develop the record on this issue (*513 W 26th Realty LLC*, 220 AD3d); and (iii) the issue being litigated is a pure question of law (*Am. Home Assur. Co. v Int'l Ins. Co.*, 90 NY2d 433 [1997] [collateral estoppel does not apply to "pure question[s] of law"]). Therefore, collateral estoppel does not preclude consideration of the constitutionality of the guaranty law.

Application of *Melendez* in This Court

Since *Melendez III* was decided, its holding has been repeatedly applied in Supreme Courts, New York County.[5] It is noted, however, that the courts in those cases were not called upon by the First Department to "resol[ve] the constitutional issue" as this court was (*513 West 26th Realty LLC*, 220 AD3d at 525-26).

As the City notes, there have been some instances in which the Supreme Court for New York County declined to follow *Melendez III*, but they were decided under circumstances that undermine their import. For example, in *141 Ave. A Assoc., LLC v Sneak EZ LLC*, 2023 NY Slip Op 51081[U], *1-2 [SC NY Co, Oct 9 2023], the court found the guaranty law constitutional, noting that "this court previously reached [that] conclusion" in *45-47-49 Eighth Avenue v Conti*, 2021 NY Slip Op 50691[U], *5 [SC NY Co July 23, 2021]. However, *45-47-49 Eighth Avenue* was decided after *Melendez I* and before *Melendez II*; moreover, on appeal, just three days after *141 Ave. A Assoc.* was decided, the First Department remanded the issue of the guaranty law's constitutionality for the parties to further develop the record, as here (*45-47-49 Eighth Avenue v*

---

[5] See *Mark Propco LLC v Jackson*, 2024 NY Slip Op 33646[U], *6-7 [SC NY Co, Oct 11 2024] ["The Court finds no basis to depart from the sound reasoning or holding in *Melendez [III]* and the other New York State trial courts that the Guaranty Law is unconstitutional."]; *558 Seventh Ave Corp. v Times Sq Photo, Inc.*, 2024 NY Slip Op 33273, *10-11 [SC NY Co, Sept 17 2024] ["finding no sense in departing from either the solid reasoning or holding in *Melendez [III]*"]; *128 Second Realty LLC v Toscana Pizza Inc.*, 2024 NY Slip Op 32713[U], *5 [SC NY Co, Aug 1 2024]; *Judson Realty LLC v Hayward Luxury, Inc.*, 2024 NY Slip Op 30744[U], *8 [SC NY Co, Mar 8 2024]; *370 8th Ave. Grp., LLC v Burke*, 2023 NY Slip Op 34309[U], *3 [SC NY Co, Dec 4 2023]; *Dongqi 79 Alumni, Inc. v United POS Inc.*, 2023 NY Slip Op 32225[U], *6 [SC NY Co, June 27 2023]; *Kensington House NY LLC v Accardi*, 2023 NY Slip Op 31673[U], *3 [SC NY Co, May 17 2023]

**160266/2020  513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**   **Page 10 of 22**
 **Motion No.  003 004**

10 of 22

*Conti*, 220 AD3d 473, 474 [1st Dept 2023]). In *Mansion Realty LLC v 656 6th Ave Gym LLC*, 79 Misc 3d 372 [SC NY Co, Apr 21 2023], the court denied the landlord-plaintiff's request for leave to assert a claim as barred by the guaranty law, but it did so "without prejudice to its renewal should the First Department hold § 22-1005 unconstitutional" in the appeal of *45-47-49 Eighth Avenue* (*id.* at 380). Finally, the City cites *201 E. 10th St. LLC v Garcia*, 2022 NY Slip Op 33401 [SC NY Co, Oct 4 2022], as an example of the Supreme Court diverging from *Melendez.* However, the court merely noted that "the Second Circuit [in *Melendez II*] did not find the Guaranty Law to be unconstitutional" and thus "there ha[d] been no outright change in the law" such that the landlord-plaintiff's motion to renew should be granted (*id.* at 12). The decision pre-dated *Melendez III*, in which the Southern District made such a finding of unconstitutionality, and the decision is on appeal to the Second Circuit.

Constitutional Analysis

In deciding whether a law violates the Contracts Clause, the court must apply a two-step test that considers: (1) "whether the state law has operated as a substantial impairment of a contractual relationship," which is determined by considering "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights"; and if the law operates as a substantial impairement (2) "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose" (*Sveen v Melin*, 584 US 811, 819 [2018]).

As for the first step of the test, the City's argument that the guaranty law does not operate as a substantial impairment because "it merely makes commercial leases less profitable" (NYSCEF Doc No 142) fails for all the reasons stated in the *Melendez* decisions (see *Melendez I* at 32-33 [finding that the law "was wholly unexpected," the landlords "would not have signed

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.          Page 11 of 22
Motion No.  003 004

11 of 22

[* 11]

the lease[s] without a guaranty clause in it," and the impairment is permanent in that landlords "will never be able to collect from the personal guarantor money due and owing" during the statutory period]; *Melendez II* at 1033-35 [finding that the law "permanently and unexpectedly [] repudiate[s] commercial lease guaranties" and thus "substantially undermines the landlord's contractual bargain, interferes with his reasonable expectations, and prevents him from safeguarding or ever reinstating rights to which he was entitled during a sixteen-month period"]). As the Southern District noted, "nothing in the record demands a conclusion different than the one previously reached, and adopted by the Second Circuit, on the substantial impairment prong of the Contracts Clause analysis" (*Melendez III* at 198). The guaranty law is therefore deemed to impose a substantial impairment on the affected contractual relationships.

Thus, "the inquiry turns to [step two,] the means and ends of the legislation" (*Sveen*, 584 US at 819). When considering the means and ends of the guaranty law, the court must consider whether it is drawn in an appropriate and reasonable way to advance the City's legitimate public purpose, i.e., "to prevent New York's small business owners from being pushed into both business and personal bankruptcy, which would eliminate their ability to remain in or return to micro entrepreneurship, and would further exacerbate the ongoing economic crisis for the entire City" (*Melendez I* at 33 [internal quotation marks omitted]).

The City argues that this court should not follow the reasoning of *Melendez II* because the majority's "invention of a five-factor test for Contracts Clause legislation does not comport with" precedent embracing the substantial-deference standard which applies to Contracts Clause challenges and inappropriately "usurps the legislature's core role in making predictive judgments based on the legislative record" (NYSCEF Doc No 142). The Second Circuit, in discussing these five factors, did not create a new "test" as the City suggests; rather, these factors were identified

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.
Motion No.  003 004

Page 12 of 22

12 of 22

as "serious concerns" which "inform[ed the court's] conclusion" that it could not make a judgment as a matter of law based on the record before it (*Melendez II* at 1038, 1047). These concerns were informed by *Blaisdell*, in which the Supreme Court considered whether: a genuine economic emergency existed which "furnished a proper occasion for the exercise of the reserved power of the state to protect the vital interests of the community"; the challenged legislation protected "a basic interest of society" and "was not for the mere advantage of particular individuals"; the relief afforded was "appropriate" to the emergency; the relief was granted "upon reasonable conditions"; and the law was "temporary in operation" (*Blaisdell*, 290 US at 444-47). Furthermore, the Second Circuit stated: "While we defer to legislative judgments about the means reasonable and appropriate to address a public emergency, such deference is not warranted in the absence of some record basis to link purpose and means that, otherwise, appears missing" (*Melendez II* at 1041).

Here, just as the Southern District determined on remand, even "with the benefit of significant time to address [these] discrete concern[s] raised by the Circuit," the City "fail[ed] to point to record evidence providing for this 'missing link'" (*Melendez III* at 201-02).

i.      *Permanence of the Impairment*

First, the guaranty law does not merely defer payments; it permanently impairs the contracts by preventing landlords from ever collecting on rent becoming due during the statutory period (compare *Blaisdell*, 290 US at 439 [mortgage moratorium "deferred a mortgagor's obligations and a mortgagee's remedies, but it did not abolish them"] with *Allied Structural Steel Co v Spannaus*, 438 US 234, 250 [1978] [legislation "worked a severe, permanent, and immediate change in those relationships – irrevocably and retroactively"]).

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.          Page 13 of 22
Motion No.  003 004

13 of 22

In urging otherwise, the City points to cases in which the Supreme Court and Second Circuit rejected Contracts Clause challenges to laws permanently impairing contracts (NYSCEF Doc No 142, citing *Keystone Bituminous Coal Ass'n v DeBenedictis*, 480 US 470 [1987], *Sanitation & Recycling Indus. v City of New York*, 107 F3d 985 [2nd Cir 1997], and *CFCU Cmty. Credit Union v Hayward*, 552 F3d 253 [2nd Cir 2009]). However, as noted in *Melendez II*, "[t]his misses the point. We do not here hold that . . . a permanent impairment of contract can *never* be deemed reasonable or appropriate. Rather, we understand those cases to instruct that a permanent and complete impairment of contract . . . will *weigh heavily against* a finding of reasonableness" (*Melendez II* at 1039-40 [emphasis added]).

The City refers to Speaker Corey Johnson's observations that "[o]ur economy runs on small businesses and now they are facing unprecedented losses" and that "[t]his could be the worst economic disaster that New York City has seen since the great depression" (NYSCEF Doc No 102, 10:11-20). However, the City did not indicate how this evidence from the legislative record provides any support for its assertion that the guaranty law was reasonable and appropriate, despite its permanent impairment of a commercial landlord's right under a lease to collect rent due during the statutory period.

Therefore, the first issue raised by the Second Circuit permanence of the impairment has not been adequately addressed.

*ii.     Assumptions Upon Which the Guaranty Law Was Based*

Second, the City identifies parts of the legislative record that support some, but not all, of the assumptions upon which the guaranty law was based (*see supra* FN2).

Assumption (b)—that the affected owner-guarantors would be financially ruined if required to pay their businesses' rent arrears—is supported by the record, as the "City Council

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**
**Motion No.  003 004**

**Page 14 of 22**

14 of 22

[* 14]

was presented with a wealth of testimony from small business owners which made starkly clear just how dire their financial circumstances were, particularly at the outset of the pandemic in the spring of 2020" (*Melendez III* at 201; see, e.g., NYSCEF Doc No 103, p. 111 [Bryan Cowan, Owner of Wisefish, stating: "Because of personal guarantees in our leases I not only have to deal with a potentially failing business, I too have to think about personal financial ruin and bankruptcy"]).

Assumption (c)—that financially ruined owners would be unlikely to reopen shuttered businesses—is also supported by the record, which "reveals that the City Council heard at least some testimony from business owners indicating that, without legislation targeting guaranty clauses in commercial leases, they were uncertain if they would ever be able to reopen shuttered businesses" (*id.*; see, e.g., NYSCEF Doc No 103, p. 146 [Doris Huang, Owner of The Deco Food + Drink, stating "The vast majority of [small business owners] WANT to revive our businesses, but it will be impossible without some bold support from our landlords and from the government"]).

However, the City has not identified any evidence supporting assumption (a)—that shuttered small businesses are *usually* owned by the individuals guaranteeing their leases. Instead, it merely asserts that "it was reasonable [] to conclude that *some* small business owners had also personally guaranteed commercial leases [because] the City Council heard testimony from those who were both owners and guarantors" (NYSCEF Doc No 142 [emphasis added]). This fails to indicate what proportion of shuttered small businesses are owned by the individuals guaranteeing their leases. "This failing on the City's part is critical" because it also did not demonstrate "that it considered evidence justifying why it need not condition the relief on guarantors owning [the] businesses" (*Melendez III* at 202 [internal quotation marks omitted]).

Therefore, the City has demonstrated that assumptions (b) and (c) were supported by the record, but it has not provided adequate support for assumption (a).

### iii. Allocation of the Economic Burden

Third, the Second Circuit raised the issue of the allocation of the guaranty law's economic burden, noting that the law's benefits come "at the expense of a discrete group of private persons: commercial landlords" (*Melendez II* at 1042, citing *Ass'n of Surrogates and Supreme Court Reporters v New York*, 940 F2d 766, 773 [2nd Cir 1991] [the costs of expanding the court system was placed "on the few shoulders of judiciary employees instead of the many shoulders of the citizens of the state"]; compare *Blaisdell*, 290 US at 446 [moratorium law showed "regard to the interest of mortgagees as well as to the interest of mortgagors" and sought "to prevent the impending ruin of both"] with *W.B. Worthen Co. v Kavanaugh*, 295 US 56, 60 [1935] [finding legislature showed "studied indifference" to mortgagee's interests in enacting moratorium that took from mortgage its "quality of an acceptable investment for a rational investor"]).

The City argues that the Second Circuit's reliance on *Ass'n of Surrogates* is misplaced because it "is a public-contracts case[] which embodies the unique concerns of those cases," while "[t]he legislation here is not similarly suspect (NYSCEF Doc No 142). However, the City does not explain why this distinction between public and private contracts should affect the court's consideration of the legislation's unbalanced allocation of the economic burden. Moreover, the Southern District has applied the *Melendez II* reasoning to other private contracts challenged pursuant to the Contracts Clause (*DoorDash, Inc. v City of New York*, 629 F Supp 3d 268, 295 [SDNY 2023] ["Instead of placing the burden on the public at large, Defendant

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.
Motion No.  003 004

Page 16 of 22

16 of 22

allocated the burden to the few shoulders of Plaintiffs and other operators of third-party platforms"] [internal quotation marks omitted]).

The City also asserts that it was reasonable for the City Council to conclude that commercial landlords were in a better position to bear the economic burden than personal guarantors, citing Local Law 98 of 2020 and Local Law 50 of 2021, which state: "While businesses may be willing to weather the economic hardships imposed upon them . . . natural persons who personally guarantee the financial obligations of these businesses face a different and more substantial risk" (NYSCEF Doc Nos 128, 141). Here, however, the City has pointed to its conclusion without identifying the record support on which that conclusion was based. As noted by the Second Circuit, "nothing in the record indicates City Council review of any empirical evidence" as to whether "commercial landlords are better positioned financially than guarantors . . . when first enacting the Guaranty Law in May 2020, or when renewing it in September 2020 and April 2021" (*Melendez II* at 1040). The City was afforded the opportunity to "adduce such evidence" supporting its contention, but it failed to do so (*id.*).

The City again notes that pandemic-related  public services were made available to commercial landlords. In *Melendez III*, the Southern District found that this did not resolve the issue of the disproportionate burden allocation, as the public services were also available to tenants. The City asserts that this finding "ignores the evidence in the record that *tenants in particular* found available services difficult to access" (NYSCEF Doc No 142 [emphasis in original]). In support of this contention, the City notes that Speaker Corey Johnson stated in the April 29, 2020 hearing that "Congress made some improvements to the Paycheck Protection Program but these loans are still too hard to access in their ensured supply and I'm not confident that they will end up helping the vast majority of New York City small businesses" (NYSCEF

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.          Page 17 of 22
Motion No.  003 004

17 of 22

Doc No 102, 11:2-6). While this reflects that small businesses had difficulty accessing available services, it does not address the ease with which commercial *landlords* accessed available services; in other words, it cannot be determined from the record that commercial landlords were able to secure services where tenants and guarantors were not.

Moreover, the City acknowledges that in drafting the guaranty law, the legislature considered the fact that business owners were defaulting on rent payments "through no fault of their own" (NYSCEF Doc No 142), but neither were landlords "in any way responsible for the economic problem that the Guaranty Law seeks to address" (*Melendez II* at 1042; compare *RHC Operating LLC v City of New York*, 2022 U.S. Dist. LEXIS 58925, \*38-39 [SDNY 2022] [finding it reasonable to allow hotels to take on the legislation's economic burden because they had "the power to change the status quo"]). All else being equal, there is no reasonable basis for the legislature to alter these private contracts in such a way that takes the entire burden off guarantors (who explicitly contracted to accept liability) and onto landlords (who explicitly contracted to disclaim liability).

Therefore, the City has not adequately addressed the Second Circuit's third concern regarding allocation of the economic burden.

### iv.    Absence of a Need Requirement

Critically, "[t]here is not even a requirement that the [guarantor] satisfy the court of his inability to pay" before receiving the relief provided under the guaranty law (*Kavanaugh*, 295 US at 61; *W.B. Worthen Co. v Thomas*, 292 US 426, 434 [1934] ["the Act contains no limitations as to time, amount, circumstances, or need"]). As the Second Circuit noted, "[m]any forms of pandemic financial relief are conditioned on individual applicants demonstrating need or hardship . . . to make sure public benefits are responsibly distributed to serve their public

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.          Page 18 of 22
Motion No.  003 004

18 of 22

purpose," yet "[t]he record indicates little Council discussion on the subject of guarantor need, much less a stated reason for not including such a condition in the challenged law" (*Melendez II* at 1043-44]).

The City argues that "the Council could judge that its tailoring of the law . . . was sufficient, without requiring an additional layer of bureaucracy to try to define and adjudicate 'need' when time was short and the requirement for action pressing" (NYSCEF Doc No 142) but does not explain why this form of pandemic-related relief should be treated differently than the others. Indeed, as the Second Circuit noted, "[t]he record indicates little Council discussion on the subject of guarantor need, much less a stated reason for not including such a condition in the challenged law" (*Melendez II* at 1044). The City has not shown that it was reasonable, let alone necessary, to deprive landlords of their right to recover 16 months of New York City commercial rent, without regard to the tenant's need, simply for bureaucratic efficiency.

Therefore, the City has not adequately addressed the fourth issue raised by the Second Circuit, the absence of a need requirment.

v.      *No Compensation for Landlords*

Finally, the Second Circuit considered "the [guaranty] law's failure to provide for landlords or their principals to be compensated for damages or losses sustained as a result of their guaranties' impairment" (*Melendez III* at 1045). It emphasized that the moratorium upheld in *Blaisdell* "allowed a delinquent mortgagor to remain in possession of premises on the condition that he pay the mortgagee reasonable rent throughout the moratorium period," thus ensuring the mortgagee was "not left without compensation for the withholding of possession" (*id.* at 1046-47, quoting *Blaisdell*, 290 US at 445). The compensation condition, though not dispositive, "was an important factor in identifying the mortgage moratorium in *Blaisdell* as a

160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.          **Page 19 of 22**
Motion No.  003 004

19 of 22

reasonable means to provide temporary and limited economic relief to mortgagors" (*id.* at 1045-46; see also *Kavanaugh*, 295 US at 61 [absence of a compensation requirement informed the identification of a Contracts Clause violation]).

As the City notes, "the Second Circuit acknowledged that 'other pandemic-related financial assistance to contracting parties may bear on the reasonableness of impairment without compensation' [and] left open the possibility that their analysis could be altered with additional record evidence on this point" (NYSCEF Doc No 142, quoting *Melendez II* at 1046 n.82). Yet, the City merely asserts that "government assistance was not accessible to small business *tenants*" (*id.* [emphasis added]) without providing any evidence as to the availability of government assistance to commercial *landlords*. The City thus failed to identify any circumstances that might allow commercial landlords to recoup any part of their losses for those 16 months of unpaid rent.

Therefore, the City has not adequately addressed the Second Circuit's fifth and final issue concerning a lack of compensation for commercial landlords.

*vi.*    *Final Considerations*

The City argues that the courts in *Melendez II* and *Melendez III* applied strict scrutiny to the legislature's judgment where it should have given it substantial deference (*DeBenedictis*, 480 US at 505 ["unless the State is itself a contracting party, courts should 'properly defer to legislative judgment as to the necessity and reasonableness of a particular measure'"], quoting *United States Trust Co. v New Jersey*, 431 US 1, 23 [1977]). However, those courts applied the correct level of scrutiny, as "[U.S. Supreme Court] cases suggest that a substantial impairment is unreasonable when 'an evident and more moderate course would serve [the state's] purposes equally well'" (*Sveen*, 584 US at 831 [2018] [J. Gorsuch, dissenting and continuing the Contracts Clause analysis past step one], quoting *United States Trust Co.*, 431 US at 31). Here, the

guaranty law "eviscerated a crucial provision negotiated into commercial lease contracts throughout the City[,] irrespective of (1) a showing that the affected guarantor owned the small business, (2) that such owner-guarantor had financial need, and (3) that such owner-guarantor would reopen the closed business following the pandemic emergency if provided the aid" (*Melendez III* at 201-02). These are all evident and there are more moderate courses the legislature could have taken. Thus, even in affording substantial deference to the City Council's judgment, the guaranty law—which entirely upsets landlords' expectations that they will be able to pursue unpaid rents from guarantors pursuant to their contracts during the statutory period—cannot be deemed reasonably tailored to suit its legitimate public purposes.

Accordingly, the guaranty law violates the Constitution Clause, Article 1 Section 10, of the United States Constitution.

**CONCLUSION**

Based on the foregoing, it is

ORDERED that plaintiff's motion for an order declaring the guaranty law unconstitutional (MS #2) is granted; and it is further

DECLARED that New York City Administrative Law section 22-1005 violates the Constitution Clause, Article 1 Section 10, of the United States Constitution; and it is further

ORDERED that plaintiff's second and third causes of action as against guarantor defendant Billis are reinstated; and it is further

ORDERED that the City's motion to dismiss the complaint as against it (MS #3) is denied; and it is further

**160266/2020  513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**
**Motion No.  003 004**

**Page 21 of 22**

21 of 22

ORDERED that defendants' motion to dismiss the complaint as against guarantor defendant Billis (MS #4) is denied.

2024123016095oPG0ETZ17C063C1B01FB49E49BFDCD9BB555EF9A

**12/30/2024**
**DATE**

**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | **X** | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | **X** | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**160266/2020   513 WEST 26TH REALTY, LLC vs. GEORGE BILLIS GALLERIES, INC.**                    **Page 22 of 22**
**Motion No.  003 004**

22 of 22

[* 22]